IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

| | | |
|---|---|---|
| ALEX PACHECO, | § | |
| | § | |
|     *Plaintiff*, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 7:10-CV-00116-RAJ |
| | § | |
| FREEDOM BUICK GMC TRUCK, INC., | § | |
| | § | |
|     *Defendant*. | § | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND SUPPORTING BRIEF

Defendant Freedom Buick GMC Truck, Inc. ("Freedom") files this Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 and Western District Local Rule CV-7. Freedom is entitled to summary judgment on all of the claims under Title VII of the Civil Rights Act asserted by Plaintiff Alex Pacheco ("Pacheco"), for the following reasons.

### I.   GROUNDS FOR SUMMARY JUDGMENT

Pacheco had been a receptionist at Freedom for 17 months when Freedom terminated his his employment. Pacheco claims that he was terminated because he, although a biological male, suffers from gender identity disorder and identifies himself more as a woman than a man, going so far as to begin hormone treatment and dress and appear more like a woman. But, there is no evidence that Pacheco was terminated because he wished to appear more like a woman than a man. Rather, the only credible evidence shows that Pacheco was terminated because he was a bad employee.[1]

---

[1] Pursuant to Local Rules CV-7(b) and CV-7(c), Freedom sets forth its summary of the facts in its Appendix in Support of this Motion for Summary Judgment and Brief in Support, which is being filed in conjunction with this Motion.

Pacheco conveniently ignores his shortcomings as a receptionist, and instead tries to take advantage of his former employer by self-diagnosing himself with gender identity disorder, claiming that he was terminated because of his sex. Pacheco's sexual discrimination claim, however, is simply not viable for two reasons:

(1) the term "sex" in Title VII has never been interpreted to include sexual identity or gender identity disorders and because Pacheco's claim is based solely on his self-proclaimed status as transsexual or transgendered, not on any failure to conform to male gender stereotypes, his claim is not recognized by Title VII; and

(2) Pacheco cannot otherwise show that Freedom intentionally discriminated against him because of his failure to conform to any male gender stereotypes.

## II.  ARGUMENT & AUTHORITIES

In reviewing a Title VII claim, this Court is to apply the well-settled, three-part, burden-shifting framework established by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-805 (1973). Under this framework, Pacheco is required to first establish a prima facie case of prohibited employment action. *Id.* If Pacheco is successful in doing so, the burden shifts to Freedom to articulate a "legitimate, nondiscriminatory reason for its adverse employment action." *Id.* Once Freedom satisfies its burden, "summary judgment is warranted unless the employee can show there is a genuine issue of material fact as to whether the proffered reasons are pretextual." *Id.* Here, because a transsexual – like Pacheco claims to be – is not a protected class under Title VII, and because there can be no material fact as to whether Freedom's non-discriminatory reason for terminating Pacheco is pretextual, Freedom is entitled to summary judgment on Pacheco's claim.

**A.  Pacheco Cannot Establish a Prima Facie Case of Discrimination Because He is Not a Member of a Protected Class.**

Title VII provides that "[i]t shall be an unlawful employment practice for an employer … to discharge any individual, or otherwise discriminate against any individual … because of such

individual's … sex." 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case of sex discrimination, Pacheco must show: (1) he is a member of protected class; (2) he is qualified for his position; (3) he suffered an adverse employment action; and (4) others similarly situated, but outside the protected class, were treated more favorably. *Willis v. Coca Cola Enters.,* 445 F.3d 413, 420 (5th Cir. 2006); *see also Alvarado v. Tex. Rangers,* 492 F.3d 605, 611 (5th Cir. 2007). Pacheco cannot show that, as a transsexual, he is a member of a protected class. As such, his claim necessarily fails.

The crux of Pacheco's claim seems to be that he was terminated because he is a transsexual.[2] Specifically, Pacheco makes no claim that he was terminated because of the way he was dressing at work. In fact, Pacheco had been dressing in women's shirts, wearing a bra, and otherwise physically appearing as a woman for some time.[3] Pacheco contends, instead, that once it became clear that he was a transsexual, that is when he was terminated.[4]

Although the Fifth Circuit has yet to squarely address the issue,[5] most other circuits to have addressed the issue agree that discrimination against a transsexual because that person is a transsexual is not "discrimination based on sex" and therefore not actionable under Title VII. *See, e.g., Etsitty v. Utah Transit Auth.,* 502 F.3d 1215, 1221 (10th Cir. 2007) ("This Court agrees with *Ulane* and the vast majority of federal courts to have addressed this issue and concludes

---

[2] (App. 61; Pacheco Deposition at 238, lines 5-19). Notably, in his original charge of discrimination, Pacheco claimed he was discriminated against for being homosexual. (App. 159; EEOC Records, Intake Questionnaire at 2). Certain that being a homosexual did not put him in a protected class, he changed his tune for purposes of this lawsuit.

[3] (App. 26, 31, 33; Pacheco Deposition at 99, line 21 – 100, line 3; 120, lines 3-4; 126, lines 5-11); (App. 102; Dominguez Deposition at 92, lines 9-15).

[4] (App. 47, 61; Pacheco Deposition at 237, lines 1-11).

[5] In *Kirkpatrick v. Seligman & Latz,* 636 F.2d 1047 (5th Cir. 1981), the Fifth Circuit rejected a male "prospective transsexual" plaintiff's equal protection claim that he was terminated for wanting to wear female clothing at work. *See Kirkpatrick,* 636 F.2d at 1049-50 (5th Cir. 1981). However, the Fifth Circuit did not directly address whether transsexuals were a suspect class entitled to bring such a claim. *Id.* at 1050. "We conclude that we do not need to reach the question of whether transsexuals are a suspect class, because we conclude that this complaint nowhere alleged conduct by the defendants that discriminated against such a class or against the plaintiff qua transsexual." *Id.*

discrimination against a transsexual based on the person's status as a transsexual is not discrimination because of sex under Title VII."); *Ulane v. Eastern Airlines,* 742 F.2d 1081, 1085 (7th Cir. 1984); *Sommers v. Budget Mktg., Inc.,* 667 F.2d 748, 750 (8th Cir. 1982); *Holloway v. Arthur Andersen & Co.,* 566 F.2d 659, 662-63 (9th Cir. 1977); *Schroer v. Billington,* 577 F. Supp. 2d 293, 305 (D. D.C. 2008) (noting that nearly all federal courts have said that discrimination based on transsexuality itself is not protected by Title VII).  Even the case Pacheco relies on, *Glenn v. Brumby,* 724 F. Supp. 2d 1284 (N.D. Ga. 2010), recognizes that transsexuals are not members of a protected class based on sex.  *See Glenn,* 724 F. Supp. 2d at 1300.

District courts within the Fifth Circuit also recognize that discrimination based solely on a person's status as a transsexual is not actionable under Title VII.  *See Trevino v. Center for Health Care Servs.,* No. SA-08-CV-0140-NN, 2008 WL 4449939, *1 & n. 6 (W.D. Tex. Sept. 29, 2008); *Lopez v. River Oaks Imaging & Diagnostic Group, Inc.,* 542 F. Supp. 2d 653, 658 (S.D. Tex. 2008) ("Courts consistently find that transgendered persons are not a protected class under Title VII *per se.*"); *Oiler v. Winn-Dixie Louisiana, Inc.,* No. Civ. A. 00-3114, 2002 WL 31098541, *6 (E.D. La. 2002) (Title VII's prohibition of discrimination on the basis of sex does not include sexual identity or gender identity disorders).

In his petition, Pacheco attempts to distance himself from this case law by relying instead on the cases that do recognize a valid discrimination claim based on sex for "those who do not conform to gender stereotypes."  *Glenn,* 724 F. Supp. 2d at 1300 (citing *Price Waterhouse v. Hopkins,* 490 U.S. 228, 251 (1989)).  But, while he labels it as such, Pacheco's claim is not one of discrimination based on his failure to conform to gender stereotypes.  Pacheco admits that he did not conform to gender stereotypes from the moment he started with Freedom.  At his interview, Pacheco admits he was very obviously gay, and his friend Sarah Dominguez

("Dominguez") confirms that, from day one, he was very obviously feminine.[6] And, after he started working at Freedom, Pacheco began taking female hormones which caused his hair and breasts to grow, started wearing women's shirts, and started wearing a bra.[7] Pacheco simply makes no claim, nor does one even exist, that he was terminated because he did not conform to male stereotypes.

*Oiler v. Winn-Dixie* is particularly instructive here. In *Oiler*, the plaintiff was a male crossdresser but only crossdressed at home or in public. 2002 WL 31098541, at *1. The plaintiff did not crossdress at work, and was not terminated for violating any Winn-Dixie dress code. *Id.* at *2. Nonetheless, Winn-Dixie terminated Oiler because of his lifestyle in which he publicly adopted a female persona and publicly crossdressed as a woman. *Id.* Oiler was not terminated for appearing or acting effeminate at work. *Id.*

In rejecting the plaintiff's sexual discrimination claim and granting Winn-Dixie summary judgment on his claim, the court distinguished this case from one that might arguably be governed by *Price Waterhouse – i.e.,* one in which the plaintiff is discriminated against based on a failure to conform to gender stereotypes. *See id.* at *5-6. The court found "no evidence that plaintiff was discriminated against because he was perceived as being insufficiently masculine, i.e., that he suffered adverse employment actions because he appeared to be effeminate or had mannerisms which were stereotypically feminine." *Id.* at n. 60. The court reasoned that:

> … this is not a situation where the plaintiff failed to conform to a gender stereotype. Plaintiff was not discharged because he did not act sufficiently masculine or because he exhibited traits normally valued in a female employee, but disparaged in a male employee. Rather, the plaintiff disguised himself as a person of a different sex and presented himself as a female for stress relief and to

---

[6] (App. 61; Pacheco Deposition at 238, lines 3-4); (App. 102; Dominguez Deposition at 92, line 18 – 93, line 3).
[7] (App. 26, 31, 33, 37; Pacheco Deposition at 99, line 21 – 100, line 3; 120, lines 3-4; 126, lines 5-11; 141, lines 19-23); (App. 102; Dominguez Deposition at 92, lines 9-15). The surveillance video taken on June 11, 2010, in addition to showing the true reason for Pacheco's termination, shows exactly how Pacheco appeared at work. (App. 165-168; Affidavit of Hooker at Ex. A).

> express his gender identity. The plaintiff was terminated because he is a man with a sexual or gender identity disorder who, in order to publicly disguise himself as a woman, wears women's clothing, shoes, underwear, breast prostheses, wigs, make-up, and nail polish, pretends to be a woman, and publicly identifies himself as a woman named "Donna."

*Id.* at *5. Since the plaintiff's case was not one akin to the circumstances presented by *Price Waterhouse,* the court concluded that the plaintiff's claim was one based solely on his status as a transsexual and, as such, was not actionable under Title VII. *See id.* at *6.

The only discernable basis for Pacheco's discrimination claim is his status as a transsexual. Pacheco can present no evidence that he was discriminated against because he was perceived as being insufficiently masculine, or because he appeared effeminate. Pacheco admitted he was effeminate when he was hired by the same person who terminated him. Notably, a female cashier was terminated at the same time. Like the plaintiff in *Oiler*, Pacheco's claim can only be viewed as one based on his status as a transsexual. Because transsexuals, in and of themselves, are not a protected class, Pacheco fails to present a prima facie claim of discrimination and his claim necessarily fails.

**B.     Freedom Clearly Had a Legitimate, Nondiscriminatory Reason for Terminating Pacheco.**

Notwithstanding his failure to meet his prima facie burden, Pacheco cannot satisfy the rest of his burden. Once a prima facie case is presented, it becomes the employer's burden to articulate some legitimate, nondiscriminatory reason for terminating him. *See McDonnell Douglas,* 411 U.S. at 802. Freedom's burden is one of production only, not persuasion, and as such involves no credibility determinations. *See Tex. Dep't of Comm. Affairs v. Burdine,* 450 U.S. 248, 254-55 (1981). To accomplish its burden, Freedom must simply set forth evidence confirming the reasons for the plaintiff's termination. *See id.* at 255.

Pacheco had a number of issues with his performance at work.  *See* Defendant's Appendix at pages 4-5.  The reasons he was terminated can be pinpointed.  Pacheco was terminated based on his conduct on June 11, 2010.  Pacheco and Dominguez were caught on the company's surveillance cameras horsing around in the reception area, in front of the customers.[8]  In the video, Pacheco and Dominguez are seen chasing each other around the reception desk in front of customers, running back and forth through the reception area, slapping at each other, spinning each other around in the reception chair, and generally, "acting like five-year olds."[9]  Josefina Hooker ("Hooker"), President of Freedom and the person who made the decision to terminate Pacheco and Dominguez, describes the video as follows:

> … [Pacheco] goes to visit Sarah, and then Sarah comes back to the reception area, and they start to chase each other around.  And there is customers walking back and forth, because that's my showroom, and they're chasing them – each other around the reception area, which is a pretty big desk.
>
> And then one of them sits on the chair and they start twirling each other around.  And then one of them, I think, sits on the desk and they start playing around like they're five.  And this goes on for a while, and I understand the video, but it went on for a pretty long time.
>
> And a customer passes by and looks at them, and they start – they stop, I think, and then they start giggling.  That is very unprofessional for somebody that I entrust to be a good employee, to be a professional employee, represent Freedom to be acting that way.[10]

To Hooker, the conduct was "[b]eyond unprofessional" and not something she would tolerate in her company.[11]  Even Pacheco admitted that such behavior was unprofessional.[12]

---

[8] (App. 165-168; Affidavit of Hooker, Exhibit A).
[9] (App. 130, 135; Hooker Deposition at 137, lines 12-15; 161, line 19 – 162, line 3).
[10] (App. 132; Hooker Deposition at 145, line 22 – 146, line 14).
[11] (App. 130, 135; Hooker Deposition at 137, line 21-25; 161, line 25 – 162, line 3).
[12] (App. 49; Pacheco Deposition at 192, lines 4-7).

Based on Pacheco and Dominguez's conduct, Hooker decided to terminate them both.[13] Although it should go without saying, deficiencies in work performance are legitimate, nondiscriminatory reasons for terminating an employee, as a matter of law. *See Equal Employment Opportunity Comm'n v. Air Liquide USA LLC,* 692 F. Supp. 2d 658, 674 (S.D. Tex. 2010). Pacheco exhibited many deficiencies in his 17 months at Freedom. The biggest occurred on June 11, 2010, and it alone justified his termination. Clearly, Freedom had a legitimate, nondiscriminatory reason for Pacheco's termination.

**C.     Freedom's Legitimate, Nondiscriminatory Reason for Terminating Pacheco was not Merely Pretext for any Real, Discriminatory Purposes.**

Once a legitimate, nondiscriminatory reason is given, the burden shifts back to the plaintiff to demonstrate that the proffered reason is not true, but is instead a pretext for intentional discrimination. *Price v. Federal Express Corp.,* 283 F.3d 715, 720 (5th Cir. 2002). On summary judgment, the plaintiff is required to substantiate this claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision. *See id.* The plaintiff's subjective belief, or that of a co-worker, that the employer's decision was motivated by discrimination, even if genuinely held, does not create a fact issue sufficient to defeat a motion for summary judgment. *See Armendariz v. Pinkerton Tobacco Co.,* 58 F.3d 144, 153 (5th Cir. 1995).

Pacheco cannot show that Freedom's reason for his termination lacks veracity. Simply, Pacheco cannot dispute the video taken of him and Dominguez on June 11, 2010. There can be no question that Pacheco and Dominguez's conduct, in and of itself, was childish,

---

[13] (App. 130; Hooker Deposition at 137, lines 1-7).

unprofessional, and justified dismissal. Even Pacheco agreed that such conduct is unprofessional.[14]

Pacheco's only claim of pretext seems to be that he and Dominguez were terminated because Hooker said that she was "reorganizing office duties." (Doc. 1 at 8, ¶¶ 34-36). But, Pacheco seems to only claim that the stated reason was pretext because Pacheco's position was not eliminated, and he was immediately replaced by another receptionist. (Doc. 1 at 8, ¶ 34).

Freedom, however, has never claimed that Pacheco was fired based on a traditional "reorganization" in which the plaintiff's position is eliminated. Rather, as Hooker explained in her deposition, by "reorganizing," she simply meant that she was reorganizing the office to dismiss employees who were not acting professional and replace them with employees that were more committed to the job and more professional.[15] The terminations of Pacheco and Dominguez were certainly consistent with that intent.

Pacheco can point to no other evidence to show that his termination was based on anything other than a legitimate, nondiscriminatory reason. Absent such evidence, Freedom is entitled to summary judgment on Pacheco's claim for this reason as well.

## III. PRAYER

For these reasons, Defendant Freedom Buick GMC Truck, Inc. respectfully requests that this Court grant its motion for summary judgment as to the Plaintiff's claims against it, and for such other relief to which it may be both legally and equitably entitled.

---

[14] (App. 49; Pacheco Deposition at 192, lines 4-7).
[15] (App. 122; Hooker Deposition at 34, line 11 – 35, line 24).

Respectfully submitted,

HERMES SARGENT BATES, LLP
901 Main Street, Suite 5200
Dallas, Texas 75202
214.749.6000
(f) 214.749.6100

By: *Monte K. Hurst*
Monte K. Hurst
State Bar No. 00796802
Jo Beth Drake
State Bar No. 24045942

*Counsel for Defendant*
*Freedom Buick GMC Truck, Inc.*

### CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2011, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Western District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorney of record who has consented in writing to accept this notice as service of this document by electronic means:

*Monte K. Hurst*
Monte K. Hurst