IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION

| | | |
|---|---|---|
| ALEX PACHECO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 7:10-CV-116 |
| | § | |
| FREEDOM BUICK GMC TRUCK, INC., | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND SUPPORTING BRIEF**

Plaintiff Alex Pacheco ("Plaintiff" or "Pacheco") files this Response to the Motion for Summary Judgment and Supporting Brief filed by Defendant Freedom Buick GMC Truck, Inc. ("Freedom"), showing in support as follows:

**I.   INTRODUCTION**

Freedom's two grounds for summary judgment both fail. First, Pacheco is covered by Title VII, because she is a transgendered individual who claims discrimination based on failure to conform to gender stereotypes. *Glenn v. Brumby*, 724 F. Supp. 2d 1284, 1299-1300 (N.D. Ga. 2010) ("This Court concurs with the majority of courts that have addressed this issue, finding that discrimination against a transgendered individual because of their failure to conform to gender stereotypes constitutes discrimination on the basis of sex.").

Second, Pacheco has offered sufficient evidence to create a genuine issue of material fact either: (1) that Freedom's reason for termination is not true, but is instead a pretext for discrimination; or (2) that Freedom's reason, while true, is only one of the reasons for its conduct, and another motivating factor is Pacheco's protected characteristic. *See Machinchick v. PB Power, Inc.*, 398 F.3d 345, 352 (5th Cir. 2005).

## II. ARGUMENT AND ANALYSIS

### A. Pacheco Is A Member Of A Protected Class

Courts have repeatedly recognized that a transsexual who alleges that they were subject to an adverse employment action for failing to conform to sex stereotypes concerning how an individual of that biological sex should look and behave have sufficiently pled claims of sex stereotyping and gender discrimination under Title VII. *See Smith v. City of Salem, Ohio*, 378 F.3d 566, 572, 575 (6th Cir. 2004) ("Sex stereotyping based upon a person's gender non-conforming behavior is impermissible discrimination, irrespective of the cause of that behavior…").[1]

Despite this authority, Freedom nonetheless argues that Pacheco is not protected by Title VII. Freedom relies on *Oiler v. Winn-Dixie Louisiana, Inc.*, No. Civ. A. 00-3114, 2002 WL 31098541 (E.D. La. 2002). The facts in *Oiler* are not similar to the facts here. In *Oiler*, the plaintiff was a heterosexual male, not a transsexual, and he had no intention of becoming a woman. *Id.* The facts in this case more closely resemble those in the *Glenn* case. In *Glenn*, the plaintiff, like Pacheco, was a transsexual male who began to transition into a female while

---

[1] *See also Kastl v. Maricopa Co. Cmty. Coll. Dist.*, 325 Fed. Appx. 492, 493 (9th Cir. 2009) ("it is unlawful to discriminate against a transgender (or any other) person because he or she does not behave in accordance with an employer's expectations for men or women…. Thus, [plaintiff] states a *prima facie* case of gender discrimination…"); *Glenn*, 724 F. Supp. 2d at 1299-1300 ("This Court concurs with the majority of courts that have addressed this issue, finding that discrimination against a transgendered individual because of their failure to conform to gender stereotypes constitutes discrimination on the basis of sex. The two circuits that have definitely addressed this question have reached the same conclusion.")(footnote omitted); *Creed v. Family Express Corp.*, No. 3:06-CV-465RM, 2009 WL 35237 (N.D. Ind. Jan. 5, 2009) (transgender plaintiff "may succeed on her sex stereotyping claim if she can present sufficient evidence from which a rational jury could infer intentional discrimination"); *Schroer v. Billington*, 577 F. Supp. 2d 293, 308 (D.D.C. 2008) ("In refusing to hire [plaintiff] because her appearance and background did not comport with the decisionmaker's sex stereotypes about how men and women should act and appear … [defendant] violated Title VII's prohibition on sex discrimination."); *Lopez v. River Oaks Imaging & Diagnostic Group, Inc.*, 542 F. Supp. 2d 653, 667-68 (S.D. Tex. 2008) (plaintiff, a transsexual male, "has stated a legally viable claim of discrimination as a male who failed to conform with traditional male stereotypes"). Courts in Texas, including the Western federal district, are included in the majority of courts that have recognized that a transsexual who alleges that he or she was subject to an adverse employment action for failing to conform to sex stereotypes concerning how an individual of that biological sex should look and behave have sufficiently plead claims of sex stereotyping and gender discrimination under Title VII. *See Trevino v. Center for Health Care Services* NO. CIVASA08-CV-0140 NN, 2008 WL 4449939, at *1 (W.D. Tex. Sep. 29, 2009) (finding that transsexual adequately stated a claim for relief by asserting a Title VII claim for sex discrimination); *Lopez*, 542 F. Supp. 2d at 653 ("[T]ranssexuality is a not a bar to [a] sex stereotyping claim. Title VII is violated when an employer discriminates against any employee, transsexual or not, because he or she has failed to act or appear sufficiently masculine or feminine enough for an employer.").

working for his employer.  *Glenn*, 724 F. Supp. 2d at 1290.  When the plaintiff appeared at work as a woman on October 31, 2006, he was told that his appearance was inappropriate and was asked to leave the office.  *Id*.  The court in *Glenn* found the plaintiff sufficiently stated a claim based on plaintiff's allegations that, "Plaintiff's desire to come to work dressed as a woman did not comport with how Defendant believed a biological male should act and that served as a basis for her termination." *Id* at 1305.  Pacheco, like Glenn, was told that coming to work dressed as a woman would be inappropriate, and presented substantial proof that her failure to conform to sex stereotypes concerning how an individual of that biological sex should look and behave motivated Freedom to terminate her employment.[2]  She too is protected by Title VII.

### B.  Pacheco Has Presented Enough Evidence Of Discrimination To Get Past Summary Judgment

Freedom argues Pacheco does not have evidence of discrimination sufficient to survive summary judgment.  But, Freedom: (1) applies the wrong legal standard; and (2) ignores substantial evidence of discrimination.

#### 1.  Freedom Applies The Wrong Legal Standard

Freedom claims that the only way Pacheco can get to a jury is to prove that its articulated reason for termination is a pretext for discrimination.  This is erroneous.  Rather, under the law, Pacheco may thwart summary judgment by either: (i) demonstrating that Freedom's articulated rationale was merely a pretext for discrimination (pretext alternative), **or** (ii) that discrimination was a motivating reason for the challenged employment action (mixed-motive alternative).  *See Machinchick*, 398 F.3d at 352; *see also Smith v. Xerox Corp.*, 602 F.3d 320, 325-29 (5th Cir.

---

[2] Exhibit A – App. 000042: Pacheco Deposition at 161, lines 20-21; App. 000047-000048: 184, line 19 – 185, line 2; App. 000053: 205, lines 10-19; App. 000058: 225, lines 14-25; Exhibit B – App. 000080: Dominguez Deposition at 44, lines 12-17; App. 000087: 78, lines 16-18; App. 000092: 89, lines 3-13; App. 000096: 107, lines 7-22; Exhibit G – App. 000171: Hooker Deposition at 103, line 12; Exhibit E – App. 000118: EEOC Records, Charge Detail Inquiry at Note Date 06/23/10; App. 000119: TWC Records, Charge of Discrimination at Particulars Section I.

2010) (noting availability of mixed-motive alternative analysis in Title VII litigation); *Jimenez v. DynCorp Intern., LLC*, 635 F. Supp. 2d 592, 610 (W.D. Tex. 2009) (same).

> **2.  Freedom Ignores Pacheco's Substantial Evidence Of Discrimination Under Both The Pretext And The Mixed-Motive Alternatives**
>
> a.  <u>A Reasonable Jury Could Easily Find That Freedom's Original, Reason For Termination On The Termination Form – Alleged "Company Reorganizing of Office Duties" – Is Pretextual</u>

The Supreme Court held in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000) that a ". . . sufficient evidence to find that the employer's asserted justification [for termination] is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."  Such is the case here.

On Pacheco's termination form, Freedom's owner, Jo Hooker, claimed that Pacheco's termination was the result of a "reorganization of office duties."[3] Hooker admits that a reorganization of office duties would naturally entail changing things around in a particular setting.[4]  Hooker admits that in reorganizations, people are given different duties, different jobs, and in the case of an internal promotion, increased pay.[5]  Nothing like that occurred when Pacheco was fired.  Rather, after Pacheco's termination, Freedom filled her job immediately with a person who was not transgendered.[6]  So, there was no "reorganization of office duties."  There was just a firing of Pacheco, and then a replacement of him with a person who did conform to traditional sex stereotypes.  Therefore, a jury could reasonably conclude that Freedom's "reorganization of office duties" reason for terminating Pacheco is unworthy of credence. Under *Reeves*, this alone is sufficient to survive summary judgment. *See, e.g., Potoski v. Wilkes*

---

[3] Exhibit D - App. 000107: Employee Disciplinary Report Terminating Alex Pacheco on 6/15/10.

[4] Exhibit G – App. 000169: Hooker Deposition at 93, lines 24 – 25.

[5] Exhibit G – App. 000169: Hooker Deposition at 94, lines 14 – 20.

[6] Exhibit G – App. 000155: Hooker Deposition at 40, lines 23 – 25.

*University*, 692 F. Supp. 2d 475, 486 (M.D. Pa. 2010) (denying employer's motion for summary judgment in discrimination case where employer alleged that the plaintiffs had to be terminated in a "reorganization," and stating, "[v]iewing the evidence in the light most favorable to Plaintiffs and weighing the parties' contentions, this Court finds that a reasonable jury could find that the "reorganization" defense advanced by Wilkes is "unworthy of credence"").

                        b.        Freedom's After The Fact Explanations That Contradict Its Termination Form Also Prove Pretext

Freedom now says Pacheco was fired for being a "bad employee." But the termination form Hooker used when Pacheco was fired has seventeen (17) boxes on it to categorize the basis for termination, several of which are applicable to a "bad employee."[7] Hooker chose not to check any of these boxes.[8] Thus, the way Hooker chose to fill out Freedom's own termination form at the time of termination contradicts its now tendered reasons for terminating Pacheco. This evidence further demonstrates that this is not a case in which summary judgment would be appropriate under *Reeves*. *See Forrest v. Dynamic Security Corp.*, No. Civ.A. 00-3423, 2002 WL 1204917, at *9 (E.D. La. May 2, 2002) (stating where company's asserted reasons for termination are not reflected in the termination forms, "after-the-fact" documentation is insufficient to justify the adverse employment action as a matter of law) (citing *Evans v. City of Houston*, 246 F.3d 344 (5th Cir. 2001)). While Hooker may have a story to tell to try to explain away her contradictory actions, that boils down to a credibility question for a jury to decide. *See, e.g., Dulin v. Board of Com'rs of Greenwood Leflore Hosp.*, ___ F.3d ___, No. 10–60095, 2011 WL 4090850 (5th Cir. Sept. 15, 2011) (finding that, under *Reeves*, fact and credibility issues precluded judgment for the employer as a matter of law in Title VII case).

---

[7]    Exhibit D - App. 000107: Employee Disciplinary Report Terminating Alex Pacheco on 6/15/10.
[8]    *Id*.

        c.        <u>Freedom's Shifting Explanations For Pacheco's Termination Are Sufficient Proof of Discrimination To Survive Summary Judgment</u>

When an employer gives shifting reasons for terminating an employee, that is sufficient evidence of discrimination to survive summary judgment, and support a jury verdict for the plaintiff under either the pretext or mixed-motive alternative. *See, e.g., Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 415 (5th Cir. 2007). Such is the case here. Freedom's explanation for Pacheco's termination has shifted dramatically over time.

- First, on the termination form, Freedom put forth the "company reorganizing office duties" reason.[9]

- Then, after Pacheco filed suit, Freedom reconfigured its original reason for termination in an absurd way, claiming that while admittedly there was not any "reorganization of office duties" in any normal sense of the phrase, it reorganized the office "by replacing less productive and committed employees with individuals who would be more productive and committed to their work."[10]

- Next, though Pacheco never received any written discipline, and its own termination form has a box to check for a termination based on "substandard work," – which is not checked on Pacheco termination form – Freedom then began claiming in discovery responses that Pacheco was a very substandard employee, and that is why Pacheco was fired.[11]

- Finally, at Hooker's deposition, she asserted that the reason Pacheco was fired was "because of the videotape that was captured on a Friday evening prior to the Tuesday that he was let go,"[12] something Freedom had never even raised previously as a basis for termination, much less documented.[13]

- In contrast, in Hooker's office on the date of the termination, when Pacheco asked why he was being fired, Hooker never mentioned any video of unprofessional behavior.[14] When Pacheco began crying and asking for further explanation, Hooker responded, "Stop crying, and you need to sign this."[15] "This" was the termination form.

---

[9] Exhibit D - App. 000107: Employee Disciplinary Report Terminating Alex Pacheco on 6/15/10.

[10] Defendant's Answer at ¶ 23 (Doc 4 - Filed 11/03/10).

[11] Exhibit D - App. 000107: Employee Disciplinary Report Terminating Alex Pacheco on 6/15/10; Exhibit F – App. 000135: Objections and Answers to First Set of Interrogatories at Response #3.

[12] Exhibit G – App. 000180: Hooker Deposition at 137, lines 6 - 7.

[13] Details of the video in question are discussed in the Appendix to this Response to Defendant's Motion for Summary Judgment

[14] Exhibit G – App. 000184: Hooker Deposition at 153, lines 22-25; 154, line 1.

[15] Exhibit G – App. 000184: Hooker Deposition at 153, lines 16 – 21.

Freedom's consistently inconsistent explanation for Pacheco's termination defeats its motion for summary judgment. *See, e.g., Burrell*, 482 F.3d at 415 (reversing a summary judgment that had been entered for the employer because of shifting explanations); *see also Jackson v. Host Intern., Inc.*, 2011 WL 2119644, at *3 (5th Cir. Feb. 1, 2011) (affirming jury verdict for plaintiff because "Host's internal communications surrounding Jackson's firing were riddled with inconsistencies, and testimony at trial was also inconsistent."); *Taylor v. County Bancshares, Inc.*, 325 F. Supp. 2d 755, 773-74 (E.D. Tex. 2004) (denying summary judgment where employer gave conflicting reasons for termination). Based on this legal authority, Freedom's motion for summary judgment should be denied.

            d.       <u>Freedom's Owner's Discriminatory Comments And Conduct Also Demonstrate That Summary Judgment Is Inappropriate</u>

Discriminatory comments, even if not direct evidence of discrimination, may be sufficient to survive summary judgment. *See Machinchick*, 398 F.3d at 353 (applying mixed-motive alternative and relying on arguably discriminatory comments in reversing a summary judgment that had been entered for the employer). Such comments exist in this case.

Sarah Dominguez was employed by Freedom during the time that Pacheco worked there and bore witness to the behavior of Hooker that forms the basis of this lawsuit. Dominguez signed a sworn declaration and then, unlike Hooker whose story is constantly changing and evolving, Dominguez reiterated her unwavering testimony at her deposition. Dominguez stated the following:

- She [Hooker] told me she was "shocked" to see Alex Pacheco dressed as a woman when he came up to the dealership to visit a coworker, Laurie Anne Walker, one night not long before he was fired. From the way Ms. Hooker said it, I could tell that Ms. Hooker was "shocked" in a bad way and found his dressing as a women to be very offensive.[16]

---

[16] Exhibit C – App. 000104: Dominguez Declaration at ¶ 5; Exhibit B – App. 000090: Dominguez Deposition at 83, lines 5 – 21; App. 000093: 95, lines 9 – 20; App. 000094: 100, lines 3 - 8.

- I heard some female office workers in the back office named Nancy Sigala and Elizabeth Jurado say negative things about Alex Pacheco and his wanting to become a female in front of Ms. Hooker. Ms. Hooker never told Nancy Sigala or Elizabeth Jurado to stop it. Instead, Ms. Hooker seemed to encourage it.[17]

- Ms. Hooker also sometimes sent work related instructions to Alex Pacheco through me, even though I was a mere coworker. She did that because she was uncomfortable talking to Alex Pacheco directly because of his wanting to become a female, and acting like one.[18]

- Ms. Hooker would frequently ask me if Alex Pacheco was going to get a sex change. The way she asked it I could tell she was opposed to his getting a sex change and found it very offensive.[19]

- Alex Pacheco wanted to dress as a female at work around May 2010. Ms. Hooker told me that she would not permit that because she thought it would be "inappropriate."[20]

- It was very clear to me that Ms. Hooker was perturbed and upset by Alex Pacheco's failure and inability to conform to male gender stereotypes because of the gender identity disorder he suffers from through no choice of his own.[21]

- I was terminated by the owner of the Freedom Buick GMC Truck Inc. dealership, Jo Hooker, on June 15, 2010. She told me that the reason for my termination was a "reorganization." She made no mention to me of not "fitting in" the office, or anywhere else." Yet, when Jo Hooker terminated Pacheco that same day, she told him that he didn't "fit in" the picture with the rest of the employees.[22]

- Alex complained to me about the discrimination at Freedom.[23]

These comments further demonstrate the futility of Freedom's motion for summary judgment. *See Machinchick*, 398 F.3d at 353 (applying mixed-motive alternative and relying on

---

[17] Exhibit C – App. 000104: Dominguez Declaration at ¶ 6; Exhibit B – App. 000080: Dominguez Deposition at 43, line 17 – 44, line 20; App. 000094: 99, lines 18 – 25; App. 000095: 101, lines 3 - 12.

[18] Exhibit C – App. 000105: Dominguez Declaration at ¶ 7; Exhibit B – App. 000093: Dominguez Deposition at 93, line 20 – 94, line 8.

[19] Exhibit C – App. 000105: Dominguez Declaration at ¶ 8; Exhibit B – App. 000095: Dominguez Deposition at 103, lines 19 – 22; App. 000096: 105, lines 1 – 5; 107, lines 1-3.

[20] Exhibit C – App. 000105: Dominguez Declaration at ¶ 9; Exhibit B – App. 000080: Dominguez Deposition at 44, lines 10 – 20; App. 000089: 78, lines 16 – 18; App. 000092: 89, lines 3 - 13.

[21] Exhibit C – App. 000105: Dominguez Declaration at ¶ 10; Exhibit B – App. 000096: Dominguez Deposition at 108, lines 4 – 19.

[22] Exhibit C – App. 000105: Dominguez Declaration at ¶ 3; Exhibit B – App. 000086: Dominguez Deposition at 66, lines 4-5; at 68, lines 6-12.

[23] Exhibit B – App. 000084: Dominguez Deposition at 60, lines 13 - 23.

arguably discriminatory comments in reversing a summary judgment that had been entered for the employer).

      e.      Freedom's Admission That It Has Retained Far Worse Employees Than Pacheco Also Defeats Its Motion For Summary Judgment

Disparate treatment is a means by which discrimination may be shown. *See, e.g., Ramirez v. Landry's Seafood Inn & Oyster Bar*, 280 F.3d 576, 578 (5th Cir. 2002) (reversing a summary judgment in a Title VII discrimination case where employee in non-protected class allegedly committed an offense that was just as bad, if not worse, than plaintiff did, and was not fired). There is evidence of disparate treatment in this case.

Freedom (now) claims it fired Pacheco because he was a bad employee who horse-played on a 14 minute video one time during her entire employment. Pacheco was never before disciplined. And, even her actions on the video caused Freedom no harm. In contrast, Freedom has retained employees who have had multiple written disciplinary actions, whose actions did case the Company harm:

- Ryan Barrera, who had received *two* final written warnings for tardiness, failure to follow instructions, lack of cooperation/teamwork, and substandard housekeeping, including one on June 15, 2010, was not terminated on that day while Pacheco, who had never received a written disciplinary form, and Dominguez, who had received one, were terminated.[24]

- Yeraldin Juarez received at least 8 disciplinary write-ups relating to shortages in her cash drawer ranging from $10 to $80. There is no record as to where any of this money went, whether it was stolen, whether incorrect change was given to a customer, or whether it had simply been misplaced, yet she was not terminated.[25]

- Freedom has even rehired an employee who is currently on probation after being arrested with cocaine in his Freedom demo vehicle after driving it home from a bar and leaving it unattended in a parking lot.[26]

---

[24] Exhibit G – App. 000157: Hooker Deposition at 46, lines 15-18; App. 000220-000221: Exhibit 4 to Deposition Bates Labeled Confidential Materials Subject to Protective Order 000157-000158.

[25] Exhibit G – App. 000161: Hooker Deposition at 64, lines 6-23; App. 000232-000235: Exhibit 4 to Deposition Bates Labeled Confidential Materials Subject to Protective Order 000176-000179.

[26] Exhibit G – App. 000166: Hooker Deposition at 82, lines 13–22; App. 000183: 152, lines 17-18.

This evidence also indicates that this is not a summary judgment case. *See, e.g., Ramirez*, 280 F.3d at 578.

      f. The Timing of the Events is Illustrative of Freedom's Discriminatory Motivation for Terminating Pacheco

Hooker and other office workers first saw a picture of Pacheco dressed as a woman on a social media website a few months prior to Pacheco's termination.[27] Hooker then saw Pacheco dressed as a woman within a month or two of the termination date.[28] Pacheco asked if he could come to work as a woman, and Hooker told him it would be inappropriate, in May of 2010.[29] Just prior to being fired, Pacheco complained to Tina Reyes, her supervisor, about sexually harassing comments made by Cecil Rodriguez.[30] Shortly thereafter, Hooker pulled the video and fired Pacheco. Hooker acknowledged that in the 17 months that Pacheco had worked at Freedom, the only documented or recorded evidence that supported Pacheco's termination was the fourteen (14) minute video.[31] This is despite the fact that Hooker claims she, or her husband, reviews all of the video on a daily basis.[32] Hooker conceded that she had never fired anyone else for improper behavior that had been seen on other videos.[33] The suspicious timing of Pacheco's termination further demonstrates the impropriety of summary judgment in this case. *See Sun v. Bd. of Trustees of Univ. of Ill.*, 473 F.3d 799, 812 (7th Cir. 2007) (suspicious timing can be evidence of pretext).

---

[27] Exhibit B – App. 000095: Dominguez Deposition at 102, lines 6-8.

[28] Exhibit B – App. 000089-000090: Dominguez Deposition at 79, line 23 – 81, line 8.

[29] Exhibit A – App. 000033-000034: Pacheco Deposition at 127, line 21 – 129, line23.

[30] Exhibit A – App. 000031-000032: Pacheco Deposition at 119, line 21 – 121, line 17.

[31] Exhibit G – App. 000182: Hooker Deposition at 147, lines 10 – 12.

[32] Exhibit G – App. 000178: Hooker Deposition at 139, lines 15-16.

[33] Exhibit G – App. 000180: Hooker Deposition at 139, lines 2–4.

### III. CONCLUSION

For the foregoing reasons, Plaintiff Alex Pacheco respectfully prays that the Court deny Defendant's motion for summary judgment and for all other relief to which Plaintiff is justly entitled.

Respectfully submitted,

/s/ Mark J. Oberti
Mark J. Oberti
Texas Bar No. 00789951
OBERTI SULLIVAN LLP
723 Main Street, Suite 340
Houston, Texas 77002
(713) 401-3555 – Telephone
(713) 401-3547 – Facsimile

ATTORNEY FOR PLAINTIFF

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served upon the counsel of record listed below by the Western District of Texas ECF method on the 3rd day of October 2011.

Monte K. Hurst
Hermes Sargent Bates, LLP
901 Main Street, Suite 5200
Dallas, TX 75202

/s/ Mark J. Oberti
Mark J. Oberti
